**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

C.P. o/b/o F.P.,

     **Plaintiff,**

     **v.**

**CLIFTON BOARD OF EDUCATION,**

     **Defendant.**

Civ. No. 19-8469 (KM) (JAD)

**OPINION**

**<u>KEVIN MCNULTY, U.S.D.J.</u>:**

This is a federal-court litigation, with both parties represented by counsel, over the sum of five thousand dollars—or at least the portion of that amount that may be deemed excessive—or at least the procedures by which the parties argued about it. Though it makes no difference to the result, I observe that the secret headwaters of this flowing stream of issues seem to be underlying disputes about attorney's fees.

The case arises under the Individuals with Disabilities Education Act ("IDEA"), and it concerns a $5200 charge incurred by the parent for two individual educational evaluations ("IEEs"), one psychological and one auditory, of the child. The parent declined to permit the District to see the results of the evaluations, and never used them in the process of selecting an educational program for the child. The invoices themselves, in one case as a result of heavy redaction, contained no helpful information. The District believed the $5200 charge was unreasonable, and said so. Multiple settlements fell through—seemingly not so much over the reimbursement itself as over demands for attorney's fees which continued to mount as the dispute continued. The administrative law judge ("ALJ") convened a hearing (attended by the parent's counsel, but not the parent). The ALJ, seemingly in spite of a concession by the District's counsel, ruled that the District was not liable to

pay for the evaluations at all. She ruled in the alternative that the amount claimed was not reasonable, *i.e.,* excessive. The parent appealed.

The case comes before the Court on a motion for summary judgment brought by the plaintiff, C.P., on behalf of her minor child, F.P. (DE 25), and a motion for summary judgment brought by the defendant, the Clifton Board of Education (DE 24). For the reasons set forth herein, the motions are **GRANTED IN PART AND DENIED IN PART**. The case is remanded to the administrative law judge for further proceedings on the issue of liability, but the ALJ's decision that the $5200 charge was unreasonable is **AFFIRMED**.

## I.   BACKGROUND

Plaintiff C.P. is the mother of F.P., a student who is classified as "Other Health Impaired" under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and is eligible for special education and related services. (DE 24-16 ¶ 2; DE 26-2 ¶ 1). Defendant the Clifton Board of Education (the "District"), a public body organized pursuant to N.J. Stat. Ann. § 18A:10-1 *et seq.*, operates the Clifton Public School District. (DE 24-16 ¶ 1).

In November 2016, the District ordered a series of routine evaluations of F.P.'s educational needs. (DE 24-16 ¶ 3). As part of the testing process, on November 21, 2016 District employee Marianette Bonet conducted F.P.'s psychological evaluation. (DE 24-16 ¶ 3).

Pursuant to the IDEA, on January 18, 2017, C.P. notified the District in writing that she disagreed with the psychological evaluation of F.P. and requested that an independent educational evaluation ("IEE") be performed at the District's expense. (DE 24-16 ¶ 4; DE 26-2 ¶ 4). In the same letter, C.P. also asked for an independent auditory processing evaluation of F.P.[1] (DE 26-2 ¶ 5). Allegedly, the District orally agreed to independent testing, but it did not respond to C.P.'s request in writing. (DE 24-16 ¶ 5; DE 26-2 ¶ 6).

---

[1]     These two independent educational evaluations are what is meant by "the IEEs" as used herein.

On April 27, 2017, C.P. filed a petition for due process with the New Jersey Department of Education, Office of Special Education Programs, seeking to compel the District to bear the costs of the IEEs. (DE 24-16 ¶ 6; DE 26-2 ¶ 7). On June 15 and September 10, 2017, at C.P.'s request, two independent practitioners conducted IEEs of F.P.'s educational needs. (DE 24-16 ¶ 18).

C.P. never provided the District copies of those IEEs. She did not seek to have them considered when the District determined F.P.'s school programming. (DE 24-16 ¶ 18).

With respect to the public-cost issue, C.P. and the District began settlement discussions on May 26, 2017.[2] (DE 24-16 ¶ 7). The parties reached a tentative oral agreement and memorialized it on June 22, 2017. (DE 24-16 ¶ 9). It was later discovered that the written agreement contained a settlement figure to which the parties had not orally agreed (including $15,000 in legal fees). (DE 24-16 ¶ 9). Letter writing ensued over the issue of whether this was a "typo."

Shortly afterwards, C.P.'s attorney, Eric Storjohann, left the Rue law firm and was replaced as counsel by another Rue attorney, Michelle Scanlon. (DE 24-16 ¶ 10). At that point, the clerical error in the settlement agreement was discovered and corrected. (DE 24-16 ¶ 11). The District's counsel provided C.P. and Scanlon a revised settlement agreement (DE 24-16 ¶ 12), but Scanlon replied that the firm's fees had in the interim doubled to $6,372.00. (DE 24-16 ¶ 13). The District objected to the fee increase. (DE 24-16 ¶ 14) Shortly after that, Scanlon, too, left the Rue firm and was replaced by a third attorney. (DE 24-16 ¶ 15).

On October 25, 2017, the District extended to C.P. another settlement offer. In that offer, the District agreed to fund the two evaluations and to pay $4,144 in attorneys' fees. (DE 24-16 ¶ 16).

On January 12, 2018, both sides moved for a summary decision in the administrative proceeding. The motions were fully briefed by February 2, 2018.

---

[2]   Settlement correspondence has been included in the record without objection.

(DE 26-2 ¶ 8). Administrative Law Judge Leslie Z. Celentano did not resolve the motions in advance, but she scheduled a hearing on the merits for September 7, 2018. (DE 26-2 ¶ 10)

On August 17, 2018, the parties reported that the matter had been settled. (DE 24-16 ¶ 19). A week before the Clifton Board of Education meeting at which the settlement was to be ratified, however, C.P. rescinded the agreement. (DE 24-16 ¶ 20).

Under established procedures, the District was obligated to furnish its discovery materials five business days before the September 7 hearing, *i.e.,* by August 30, 2018, but it failed to do so. (DE 26-2 ¶ 12). The District asked C.P. to provide discovery materials, but she refused. (DE 24-16 ¶ 21). On September 5, 2018, C.P. moved to exclude Clifton's evidence based on its having missed the discovery deadline, but the next day Judge Celentano rescheduled the hearing to October 24, 2018. (DE 26-2 ¶¶ 13 & 14).

The parties proceeded to the October 24, 2018 hearing. (DE 24-16 ¶ 22). At the hearing, Judge Celentano noted that the hearing would determine  two issues: whether the manner in which the IEEs were obtained was consistent with District criteria (a "liability" issue, in the parties' terminology); and whether the amount of C.P.'s request for reimbursement was reasonable (a "damages" issue). (DE 24-16 ¶ 22). The ALJ heard testimony and reviewed documentary evidence. (DE 24-16 ¶ 23).

The only witness, it seems, was called by the District. C.P. did not attend the hearing. Her counsel did attend but did not introduce any testimony or even an affidavit of the client. Counsel did not introduce the IEEs, or even a description of their methodology, in evidence. Counsel did submit two unauthenticated invoices from the experts who allegedly conducted the IEEs. One was heavily redacted and did not state so much as a diagnosis; the other, dating from months after the evaluation, consisted of a single line. Both, in effect, were little more than bare demands for payment. (DE 24-16 ¶¶ 25–28).

After the hearing, Judge Celentano dismissed C.P.'s claim, determining that "there is no testimonial or documentary evidence to support a claim for

reimbursement at public expense." (DE 24-16 ¶ 23; DE 24-16 ¶ 16). In essence, there was no evidence from which the ALJ could find that the IEEs conformed to regulatory requirements for reimbursement by the District.

As to the amount of the claim, the ALJ recited the evidence—the only evidence—as to whether the amount was reasonable. Citing similar evaluations over the last two years, the ALJ noted that they typically ran at $900. The ALJ therefore ruled in the alternative that the $5200 charge was not reasonable. *C.P. o/b/o F.P. v. Clifton Bd. of Educ.*, No. EDS 15781-17, 2018 WL 6975207 (Dec. 13, 2018).

Pursuant to 20 U.S.C. § 1415(i)(2), C.P. filed this appeal on March 13, 2019. (DE 1).

## II.   STANDARDS OF REVIEW

Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Final decisions made by the Office of Administrative Law pursuant to a due process hearing conducted under the IDEA are appealable to the United States District Court. 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516.

### A. Summary judgment standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in light most favorable to the nonmoving party. *See Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to

the district court—that there is an of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth the types of evidence on which a nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Nw. Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

## B. Review of an ALJ's decision

Any party in a special education matter may appeal a decision of an ALJ by filing a complaint with either a "state court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). The district court receives the records of the administrative hearing but may hear additional evidence if it is requested to do so by a party. *Id.* § 1415(i)(2)(C). The district court "bas[es] its decision on a preponderance of evidence." *Id.*

The United States Supreme Court has held that "due weight" is to be given to the decision of an administrative court in special education matters.

6

*Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). "Under the IDEA, the reviewing court 'is obliged to conduct a modified *de novo* review, giving "due weight" to the underlying administrative proceedings.'" *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003) (quoting *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 530–31 (4th Cir. 2002)). District courts retain some discretion to determine how much deference to accord administrative proceedings. *Oberti v. Clementine Bd. of Educ.*, 995 F. 2d 1204, 1219 (3d Cir. 1993). "The court is not . . . to substitute its own notions of sound educational policy for those of local school authorities." *S.H. v. State-Operated Sch. Dist.*, 336 F.3d at 270.

A court must consider the administrative findings of fact but may accept or reject them. *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 758 (3d Cir. 1995). That discretion is not unlimited, however. If the court chooses to depart from the findings of an administrative court, it must provide an explanation. *See Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4d Cir. 1991). "Factual findings from the administrative proceedings are to be considered *prima facie* correct." *S.H. v. State-Operated Sch. Dist.*, 336 F.3d at 270 (alteration omitted). However, "[w]here . . . the findings . . . are not supported by the record, and indeed, the record supports contrary findings, we must reverse.'" *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 528 (3d Cir. 1995) (quoting *Ali v. Gibson*, 631 F.2d 1126, 1129 (3d Cir.1980)). Finally, a district court reviewing the administrative factual findings will defer to the ALJ's factual findings "unless it can point to contrary non-testimonial extrinsic evidence on the record." *S.H.*, 336 F.3d at 270.

Questions of law are reviewed *de novo. See P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003).

## III.   DISCUSSION AND ANALYSIS

The parties are arguing past one another. C.P. focuses on what the District failed to do before she filed her due process petition. The District, on

the other hand, focuses on what C.P. failed to do both before and during the administrative hearing.

More specifically, C.P. argues that the ALJ's decision is erroneous, because the District waived its position by its prior failure to comply with the procedural requirements of the IDEA and associated regulations. The District, she says, was required to respond within twenty days to her request for an independent evaluation but did not do so. (DE 25-2 at 6–10). For this reason, C.P. argues, she was entitled to the full amount requested; that "liability" issue, from her point of view, settled all. (DE 25-2 at 5 & 14–15). C.P. also notes that the District did not disclose its evidence to her at least five days before the September 7, 2018 hearing (which actually occurred in late October). (DE 25-2 at 10–14). Finally, C.P. faults the ALJ for not giving due consideration to the redacted invoices that formed part of the administrative record. (DE 25-2 at 15–17).

The District argues that Judge Celentano properly based her decision on the lack of any testimonial or documentary evidence to support C.P.'s claim. (DE 24-1 at 11–13). The District insists that C.P. is not entitled to reimbursement because she herself failed to comply with procedural requisites (DE 24-1 at 14–16) and provided no testimony or evidence to establish the reasonableness of the dollar sum demanded (*id.* at 16–18). In any event, the District argues, C.P. never furnished the IEEs to the District in connection with the development of F.P.'s school programming. (DE 24-1 at 18–19). Finally, the District claims that the administrative action should not have proceeded to a hearing at all because as far back as June 2017 it was offering to settle with C.P. (DE 24-1 at 19–20).

For the following reasons, I remand for consideration of the so-called liability issue—*i.e.*, whether C.P. was entitled to reimbursement of this expense at all. I remand because C.P.'s counsel may not have had fair warning that she would be called on to introduce evidence on that issue. Assuming reimbursement was appropriate at all, however, I affirm the ALJ's ruling that the $5200 charge was far in excess of what was "reasonable."

### A. Regulations governing reimbursement of reasonable costs of IEEs

The purpose of the Individuals with Disabilities Education Act ("IDEA") is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designated to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). States have an obligation to ensure that children with disabilities receive a "free appropriate public education," *id.* § 1412(a)(1), in the form of special education "provided at public expense, under public supervision and direction," *id.* § 1401(8). That special education will be provided "in conformity with [an] individualized education program." *Id.*

A "child with a disability" is a "child [] with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness). . . other health impairments, or specific learning disabilities, and [] who, by reason thereof, needs special education and related services." *Id.* § 1401(3) (emphasis added). The IDEA's governing regulations require school districts to evaluate for provision of special education and related services each child with a disability at least every three years but no more than once a year. 34 C.F.R. § 300.301; *id.* 300.303

After a school district evaluates a child, if the child's parents disagree with the evaluation, they may obtain an independent educational evaluation ("IEE") at public cost. *See* 34 C.F.R. § 300.502(a)(1). Parents are entitled to obtain from the school district "information about where an independent evaluation may be obtained." *Id.* § 300.502(a)(2). If the child's parents opt to go the IEE route, the school district has two options:

> If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either--
>
>> (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or

9

> (ii) Ensure that an independent educational evaluation is
> provided at public expense, unless the agency demonstrates
> in a hearing pursuant to §§ 300.507 through 300.513 that
> the evaluation obtained by the parent did not meet agency
> criteria.

34 C.F.R. § 300.502(b)(2); *see also* N.J. Admin. Code § 6A:14-2.5(c); Clifton

Board of Education, *District Policy 2468 – Independent Educational Evaluations*

(Mar. 6, 2013). The corresponding New Jersey regulation clarifies that there is

a time limit for the District to exercise Option 1: "Not later than 20 calendar

days after receipt of the parental request for the independent evaluation, the

school district shall request the due process hearing."[3] N.J. Admin. Code

§ 6A:14-2.5(c)(1)(ii).

Federal regulations impose procedural and substantive requirements on

a parent-obtained IEE at public expense. Most fundamentally, they demand an

apples-to-apples correlation. That is, the criteria for the parents' IEE must

mirror those used by the District in its own evaluation, so the two can be

compared:

> If an independent educational evaluation is at public expense, the
> criteria under which the evaluation is obtained, including the
> location of the evaluation and the qualifications of the examiner,
> must be the same as the criteria that the public agency uses when
> it initiates an evaluation, to the extent those criteria are consistent
> with the parent's right to an independent educational evaluation.

34 C.F.R. § 502(e).[4]

---

[3]     A school district also has the option to "[u]pon receipt of the parental request,
. . . provide the parent with information about where an independent evaluation may
be obtained and the criteria for independent evaluations . . . . In addition, the school
district shall take steps to ensure that the independent evaluation is provided without
undue delay." N.J. Admin. Code § 6A:14-2.5(c)(1)(i).

[4]     New Jersey's regulations specify certain requirements that an IEE evaluator
must meet:

> Any independent evaluation purchased at public expense shall . . . [b]e
> obtained from another public school district, educational services
> commission, jointure commission, a clinic or agency approved under

A formal and detailed policy adopted by the Clifton Board of Education also requires communication between the independent evaluator and the District. This document, designated District Policy 2468, provides that the results of such a publicly funded IEE not be held in confidence, but shared with the District as part of the FAPE process and "released" to the District "prior to receipt of payment for such services":

> d. The independent evaluator and members of the Child Study Team must be permitted to directly communicate and share information with each other.  The independent evaluator must also agree to release the assessment information, results, and report(s) to the school district prior to receipt of payment for services . . . .

> f. The independent evaluator shall make at least one contact with the student's case manager for the purpose of determining how the student is progressing in his/her current programming.

Clifton Board of Education, *District Policy 2468 – Independent Educational Evaluations* (Mar. 6, 2013) (available at

https://www.straussesmay.com/seportal/Public/DistrictPolicy.aspx?policyid=2468&search=2468&id=2b9d196f55974703a9977486cb1cc6ba.) (*Id.*)

District Policy 2468 also imposes a requirement that the costs of an IEE, to be reimbursed, must be "reasonable." It imposes procedures to ascertain and ensure that they are:

---

N.J.A.C. 6A:14-5, or private practitioner, who is appropriately certified and/or licensed, where a license is required.

N.J. Admin. Code § 6A:14-2.5 (c)(2)(ii).

Locally, the regulations of the Clifton Board of Education elaborate a bit on the necessary qualifications of an IEE evaluator:

> a.  The independent evaluator must be appropriately certified and/or licensed in the State of New Jersey.  In instances where no applicable certification/license exists, the evaluator must provide the Board with documentation of extensive and recent training and experience related to the assessment of the known or suspected disability; . . .

Clifton Board of Education, *District Policy 2468 – Independent Educational Evaluations* (Mar. 6, 2013) (available at https://www.straussesmay.com/seportal/Public/DistrictPolicy.aspx?policyid=2468&search=2468&id=2b9d196f55974703a9977486cb1cc6ba.)

[1.b]   The independent evaluator may only charge fees for educational evaluation services that, in the judgment of the Board, are reasonable in accordance with 2. below; . . . .

2.      The maximum allowable cost for an independent evaluation will be limited to the reasonable and customary rate, as determined and approved by the Board annually.  This rate shall be in the range of what it would cost the Board to provide the same type of assessment through either another public school district, educational services commission, jointure commission, a clinic or agency approved under N.J.A.C. 6A:14-5, or private practitioner, who is appropriately certified and/or  licensed,  where  a  license is required.  This Board-approved rate shall be provided to the parent upon their request for an IEE.  The Board shall not be responsible for any costs beyond the IEE, such as transportation, lodging, food, etc.

> a.      The parent may provide documentation to the Board demonstrating unique circumstances to justify an IEE that exceeds the maximum allowable cost established by the Board.  If, in the Board's judgment, there is no justification for the excess cost, the Board may agree to fund the IEE up to the school district's maximum allowable cost with the parent responsible for any remaining costs.  In the alternative, the Board may request a due process hearing to enforce its established maximum allowable cost.

*Id.*

## B. Application of the regulations to this case

### 1.  The District's alleged waiver by failure to respond

Freeze-frame at the point where C.P. objected to the District's evaluation and said she wanted to obtain her own IEE at public expense. At that point, the District, as noted above, had two options.

Option 1 was for the District to file, within 20 days, an administrative due process petition, in which it could claim that its evaluation was adequate and that a further evaluation at public expense was not justified. It is helpful to think of this determination as involving, not the entire issue of liability, but a threshold issue of eligibility for reimbursement. The ALJ in this case, quoting Clifton's District Policy 2468, noted that the purpose of the District's initiating

12

a due process hearing would have been "to show that its evaluation is appropriate and a final determination to that effect is made following the hearing. If it is determined the school district's evaluation is appropriate, the parent still has the right to an IEE, but not at the school district's expense." *C.P. o/b/o F.P. v. Clifton Bd. of Educ.*, No. EDS 15781-17, 2018 WL 6975207 at *5 (Dec. 13, 2018) (quoting Clifton District Policy 2468).

The District did not exercise Option 1 within twenty days, or indeed ever. Its counsel acknowledged that it did not seek a due process hearing within twenty days after C.P. objected to the District's evaluation.

So far, so good. By failing to exercise Option 1, *i.e.*, to initiate a due process hearing within twenty days, the District procedurally forfeited the right to contest what I have called the issue of eligibility—*i.e.*, to assert that its own evaluation was appropriate and that no further evaluation could be had at public expense. In short, by filing to seek a due process hearing, the District conceded the threshold issue of the parent's eligibility to obtain an IEE and have it funded by the District.

To be eligible, however, is not to be entitled. There are other regulatory requirements that must be met—and here the disagreement begins.

C.P. asserts that the District, because it did not take Option 1 and seek a due process hearing, has waived its right to dispute that she met the other procedural criteria for reimbursement, or to argue that the amount claimed was not "reasonable." Not so, reasoned the ALJ, and I agree:

> The standard for meeting the agency criteria has also been discussed in sparse case law. "The degree of compliance necessary for an IEE to 'meet agency criteria' under 34 C.F.R. 300.502 is not explicitly defined in IDEA, its implementing regulations, or the case law, nor is there any directly relevant agency guidance." *Seth B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 977 (5th Cir. 2016). "Yet standards akin to substantial compliance are already utilized in other IDEA contexts. For example, we consider substantial compliance in determining whether school districts have provided education 'in conformity with' students' individualized education programs (IEPs), as IDEA requires." *Id.* at 977–78. The Fifth Circuit

Court was persuaded that the substantial-compliance standard also suffices in the IEE context, noting that, "34 C.F.R. 300.502 nowhere demands perfect adherence to agency criteria. Indeed, such a requirement is in tension with core purposes of the right to an IEE and of the IDEA generally. *Id.* at 978. The appellants had requested an IEE at public expense, and the school requested neither a hearing as to the appropriateness of its own evaluation nor a hearing to show that appellant's evaluation did not meet agency criteria. Rather, the school in that case requested a hearing on the subject of reimbursement. The appellants there, as the petitioner here, urged that by failing to request a hearing, the school had waived its right to refuse reimbursement. The Fifth Circuit disagreed, noting:

> The plain text of the regulation contradicts appellants' reading. 300.502(b)(2)(ii) excuses an agency from paying for an IEE if the agency simply "demonstrates in a hearing ... that the evaluation obtained by the parent did not meet agency criteria." It does not require the agency to "initiate" or "request" the hearing. In contrast, under (b)(2)(i), the agency must "file" a complaint and "request" a hearing if it wishes to decline reimbursement on the ground that its own evaluation was appropriate. This distinction strongly favors reading 300.502(b)(2)(ii) not to require the agency to initiate a hearing.

*Id.* at *4–*5.

Indeed, I do not believe the doctrine of "substantial compliance" was essential to the ALJ's conclusions. As discussed above, at the point of the parent's objection to the District's evaluation (plus twenty days), the issue for the due process hearing would have been the threshold eligibility issue: whether the District's evaluation was sufficient, or whether another, independent valuation would be justified.

Even where eligibility is conceded, however, there remain other issues and requirements in connection with an IEE at public expense. Consider that at this stage, the IEE has not even occurred yet. The District, by failing to file for a due process hearing, cannot have been waiving in advance any defect that might occur in the future. Surely the District, by acquiescing in the parents' seeking an IEE, did not sign a blank check for the parent to spend *whatever*

14

amount she wished on *any* procedure the parent might unilaterally deem to constitute an IEE. Still, C.P. was eligible at this point to go forward and obtain an IEE, for which she would be reimbursed, provided that other regulatory requirements were met.

There is a second component to C.P.'s waiver/forfeiture argument. C.P. also argues that the District, having forgone Option 1 (seeking a due process hearing), was then required to pursue Option 2—*i.e.*, to "[e]nsure that an independent educational evaluation is provided at public expense, unless the agency demonstrates . . . that the evaluation obtained by the parent did not meet agency criteria." *See* 34 C.F.R. § 300.502(b)(2)(ii). According to C.P., the District did not timely respond to her objection and failed to take immediate steps to "ensure" an IEE. The consequences, according to C.P., are draconian: because of this procedural misstep, the District must pay the full amount demanded.

To begin with, the District's obligation to "ensure" an IEE cannot mean that, in every case, the District must "provide" an IEE. If provision of the IEE were a function committed to the District, the regulatory provisions governing parent-initiated evaluations would be rendered superfluous in many respects. What the District must "ensure" is that the evaluation "is provided" and that it is provided "at public expense." 34 C.F.R. § 300.502(b)(2)(ii). The District's failure to immediately (or within twenty days) "provide" such an IEE cannot be regarded as an advance commitment to pay any sum the parent may demand for any procedure, whether or not it satisfies the criteria of an IEE or is used in the FAPE process. That would make ineffective the provision, in the very same sentence, that the District may avoid paying for the IEE (which, by hypothesis, the *District itself* provided) by demonstrating in a hearing that it "did not meet agency criteria." *Id.*

Turning to the facts of this case, the District's silence[5] in the face of the requirement that it "ensure" an IEE is difficult to interpret. It seems to have had no practical consequences. At least as interpreted by New Jersey courts, the requirement does not seem to be an onerous one; the District must provide information about where the parent might obtain an IEE, direct the parent to the relevant regulations, and ensure that the IEE may be conducted timely.[6] Here, C.P., aided by counsel, located appropriate experts, as the ALJ found. Moreover, there is no contention that she was prevented from obtaining, or failed to obtain, the IEEs in timely fashion. The District's evaluations occurred in late 2016; C.P. lodged her objection on January 18, 2017; she filed her petition for due process seeking reimbursement on April 27, 2017; the District first proposed a settlement under which it would pay for the proposed IEEs on May 27, 2017; and she alleges that the IEEs took place on June 15 and September 10, 2017.[7]

Setting aside the lack of real-world consequences, there is another problem with C.P.'s argument. It ignores the second half of the regulatory sentence on which it relies: "Ensure that an independent educational evaluation is provided at public expense, *unless the agency demonstrates . . . that the evaluation obtained by the parent did not meet agency criteria.*" 34 C.F.R. § 300.502(b)(2) (emphasis added). The right to invoke the "unless" scenario, by its nature, cannot be forfeited at the time of the parent's initial

---

[5]     At worst. Actually, C.P. claims that the District agreed orally that independent evaluations might proceed.

[6]     "Upon receipt of the parental request, [the school district shall] provide the parent with information about where an independent evaluation may be obtained and the criteria for independent evaluations . . . . In addition, the school district shall take steps to ensure that the independent evaluation is provided without undue delay." N.J. Admin. Code § 6A:14-2.5(c)(1)(i).

[7]     Curiously, it seems that the District thereafter, in November 2017, was contacting C.P. in an attempt to schedule an independent evaluation, unaware that two had already been completed. (*See C.P.,* 2018 WL 6975207 at *6; DE 22-10 at 15–16 & 25–26; DE 24-1 at 2).

demand for an IEE. By definition, that scenario cannot even occur until after the IEE has been conducted and the District has reviewed it. If the District demonstrates that the IEE obtained by the parent "did not [note the past tense] meet agency criteria," the District is seemingly again off the hook for reimbursement. Such "agency criteria" include the "apples-to-apples" requirement that the parent's IEE employ the same criteria as the District's evaluation, as well as the requirement that the costs be "reasonable." (More about that in a moment.)

So C.P., as she was eligible to do, procured the services of an expert to conduct an IEE (actually, two experts to conduct two IEEs, though no one seems to be pressing the point). She was obligated, however, to meet certain additional requirements if she wished the District to pick up the tab: (a) the IEE had to be conducted by an approved or licensed provider; (b) the IEE, as performed, had to mirror the criteria that governed the District's own evaluation and meet other regulatory requirements; and (c) the charges would be reimbursed by the District only to the extent that they were "reasonable." *See* Section III.A, *supra, passim.* If additional requirements (a) and (b) were not met, the charges for the IEE—although generically eligible for reimbursement—would not be reimbursed. If requirements (a) and (b) were met, the charges for the IEE would be reimbursed. Such reimbursement, however, would be limited to (c) a "reasonable" dollar amount.

I will assume that (a) the persons conducting the IEEs were qualified. The ALJ accepted them as such. The ALJ convened a hearing, however, as to (b) and (c).

### 2. The ALJ's "liability" ruling and the possible lulling effect of the District's concession regarding issue (b)

#### i. *The ALJ's decision as to "liability" on issue (b)*

As to (b), the regulations require the parent to provide the District with certain information about the IEE if the parent expects to be reimbursed for it. Clifton District Policy 2468, quoted above, requires that the evaluator and the members of the Child Study Team share information as the FAPE process

17

progresses, and the independent evaluator "must also agree to release the assessment information, results, and report(s) to the school district *prior to receipt of payment for services*." Clifton Board of Education, *District Policy 2468* ¶ d (emphasis added); *see also id.* ¶ f (independent evaluator shall make at least one contact with the student's case manager).

That did not occur. Perhaps C.P. and her counsel did not deem it advantageous to expose their own experts' conclusions, but it does not really matter. For whatever reason, they never released the results of the IEEs to the District, and never sought to use them in the process of designing a FAPE for the child. Now it is true, in a trivial sense, that the District did not prove that the two IEEs failed to apply the "same criteria" that governed the District's own evaluation. How could it? C.P., while demanding reimbursement for the IEEs, refused to reveal their contents. A parent cannot prevail on this issue by simply stonewalling about documents in her possession and then claiming the District failed to meet its burden of proof. Any requirement that the District prove facts regarding the IEE is necessarily predicated on the parent's having already complied with her obligation under the regulations to share the IEE with the District.

The regulations may require the public to pay for an IEE obtained by the parent, but the entire premise of that system is that the results of that IEE will play some role in the FAPE process. Parents may obtain any evaluation they wish at their own expense, but the taxpayers are not required to subsidize the parents' curiosity. The regulations do not seem to contemplate reimbursement for a back-pocket IEE.

On these grounds, the ALJ was on solid ground in finding for the District on issue (b):

> Moreover, there was no compliance with agency criteria. There was no communication from the evaluators or sharing of information, as required by the policy. There was no contact by either evaluator with the pupil's case manager, as required by the policy. Neither the assessment information nor the results of the assessment were provided to the school district, as required by the policy. The

reports were never released to the school, as is required by the policy before any payment is made for services.

*C.P. o/b/o F.P. v. Clifton Bd. of Educ.*, No. EDS 15781-17, 2018 WL 6975207 at *6 (Dec. 13, 2018).

Even at the hearing, the parents' counsel never introduced the IEEs themselves in evidence. The ALJ thus lacked proof that anything resembling the legal definition of an IEE had ever been prepared at all:

> Significantly, no witnesses or evidence were presented by petitioner at the hearing. There was no testimony that the evaluations were completed. The CAP evaluation claimed to have been completed on June 15, 2017, was never introduced into evidence. The unverified invoice dated June 17, 2017, is heavily redacted, including the diagnosis. The psychological evaluation claimed to have been completed on September 10, 2017, was never introduced into evidence. Curiously, the one-line unverified invoice for the psychological evaluation is dated February 27, 2018. Neither has ever been authenticated. The evaluators did not testify, nor were any certifications of the evaluators submitted. Petitioner did not testify, indeed, she did not even appear for the hearing as to the evaluations for which she was seeking reimbursement. No certification of petitioner has ever been submitted. The evaluations have never been provided.

*C.P. o/b/o F.P. v. Clifton Bd. of Educ.*, No. EDS 15781-17, 2018 WL 6975207 at *7 (Dec. 13, 2018).

*A fortiori,* there was no evidence that these IEEs—assumed to exist, but contents unknown—conformed to the requirement that they be based on the "same criteria" as the District's own evaluation. 34 C.F.R. § 502(e) (quoted *supra*).

Viewed on its own terms, the ALJ's decision on issue (b) was impeccable. Based on the law and the evidentiary record, I would uphold the ALJ's determination that the prerequisites for any reimbursement of the cost of the IEEs were not met.

> ii.   *The District's concession may have deprived the parent of fair warning that she would have to produce evidence on issue (b)*

But there's a problem. Both sides seem to have gone to the hearing on the assumption that "liability" was off the table—*i.e.*, that the District admitted it had to pay something, and the dispute was only over how much.

In her opening statement at the hearing, the District's counsel acknowledged the concession of liability, reserving only the issue of the reasonableness of the dollar amount:

> Although the District did not respond within the 20 days as required by the law to have –- they have agreed to fund these two IEE's at a reasonable cost to the public. They have done so since June of 2017, and I note for the record that today is October 24, 2018. Unfortunately Petitioner is seeking $5,200 to be paid for by the public. What the testimony today will show [is] an IQ test that takes a few short hours to complete. The evidence will also establish that a reasonable cost for this assessment is thousands of dollars less than what Petitioner is seeking.

(DE 22-10 at 5).[8] Moments later, C.P.'s counsel expressed his shared understanding that the liability issue had been resolved:

---

[8]   Actually, the District all along seems to have repeatedly offered to pay "reasonable" expert fees, while dickering more specifically over the dollar amount of a fee for C.P.'s counsel. (Evidence of settlement negotiations has been placed before the Court without objection.)

In May 2017—before the IEEs had even been conducted—the District extended a settlement offer that would have funded the evaluations and reimbursed C.P. $3,184 in legal fees. (DE 24-16 ¶ 8). In October 2017, the District offered to settle the dispute by funding the two IEEs at the customary and reasonable rate and paying $4,144 in legal fees. (DE 24-16 ¶ 16). These settlement offers were never consummated, and C.P. continued to pursue an all-or-nothing approach based on her perception that the liability issue was dispositive of the whole dispute and would require payment of the entire amount claimed. Legal fees, and demands therefor, continued to mount. On the eve of the scheduled hearing date in September 2018, the case was again reported settled, but C.P. rescinded her consent. (DE 24-16 ¶ 20).

In January 2018, C.P. filed a motion for summary disposition which exclusively concerned the issue of the District's liability—and not the reasonableness of the dollar amount. (*See* DE 22-3 at 32). On September 24, 2018, C.P. filed a separate motion for

>Your Honor the stack of papers in front of you is evidence of the significant motion practice that has taken place in this case and that remains undecided. Just on the side of the Petitioners there are five motions pending, three of which are dispositive. A motion for summary decision, which was filed in January of 2018 as to liability. There is a motion to exclude evidence for a directed verdict, which was filed in early September of this year, followed by a motion for summary decision as to damages on September 24th.
>
>The motions remain undecided, although it sounds from counsels opening that there is really no dispute as to the facts here. As counsel has indicated the only issue left on the table is the reasonableness of the value . . . .

(DE 22-10 at 6).

The ALJ's decision was based in large part on C.P.'s stunning failure to produce evidence of any kind that these IEEs met the requirements for reimbursement at public expense. If C.P., warned of what was at stake, had made a strategic decision that she would nevertheless rely solely on her waiver arguments—which the ALJ, and I, have found ineffective—she would have had to live with that decision.

But the *District,* to judge from its opening statement, appears to have felt it was vulnerable for failing to respond within twenty days, and conceded the waiver arguments. It is possible to construct a scenario whereby, with fair warning to all, the ALJ could have explicitly rejected that concession. After all, it is public, not private, money at stake, and the ALJ might have felt she had a supervisory role to play. But no such ruling was sought or made.

I will therefore remand for further proceedings. At any hearing on remand, C.P. and her counsel are now on notice that if they fail to produce

---

summary disposition, which addressed liability *and* damages. (DE 22-6 at 2). At that point, the October 24, 2018 hearing had already been scheduled. C.P. argues that the ALJ should have resolved the January motion before the hearing. (She assumes that she would have prevailed, and thus avoided having the rug pulled from under her at the hearing. It is not clear why she believes the ALJ's decision on the motion would have been different from her ultimate resolution of the same issue at the hearing.) C.P. does not appear to criticize the ALJ's failure to decide the belated September motion.

evidence, as they did at the first hearing, the result will very likely be the same—a finding that they are not entitled to reimbursement at all.

And the result may be the same anyway. I wish to make clear that in remanding, I am in no sense criticizing the ALJ's decision, which was sound, or suggesting that the outcome must or should be changed. Indeed, for the reasons expressed above, C.P.'s position on liability appears quite weak; even if she produces more evidence, she must still deal with, *e.g.*, the failure to comply with the local policy that requires her to share the IEE with the District and the fact that the IEE was never used in the FAPE process. But the confusion wrought by the District's concession may have misled counsel into failing to put forward C.P.'s strongest case. I will therefore give her the procedural opportunity to do so, if she wishes.

### 3. The "reasonableness" of the $5200 charge (issue (c))

In addition, and in the alternative, I discuss what the parties refer to as the "damages" issue—the District's contention that the $5200 charge for the IEEs was not "reasonable" and had to be reduced. As to this issue, I will not remand for further proceedings. Both sides understood that the damages issue (issue (c)) would be the subject of the hearing and had the opportunity to introduce whatever evidence they deemed appropriate. The ALJ accepted the District's evidence and agreed that the amount was excessive. I will affirm this component of the ALJ's ruling.

Clifton District Policy 2468 imposes the limitation that reimbursement for an IEE be at "the reasonable and customary rate" as determined by the Board. That rate is to be determined with reference to what it would have cost the Board to provide the assessment itself. (Policy 2468 ¶ 2, quoted in full at pp. 11–12, *supra*.) The parent is then afforded the opportunity to document "unique circumstance to justify an IEE that exceeds the maximum allowable cost established by the Board." (*Id.*) The District put on evidence of the usual and customary rates; C.P. put on no evidence of unique circumstances.

As the ALJ found, there was ample credible evidence that the cost of the IEEs here was not reasonable:

> [The District's learning-disabilities specialist] also testified that she has never seen a psychological report cost anywhere near $5,200, which is the reimbursement amount the petitioner seeks. [She] testified that an independent psychological evaluation typically costs $900; some amounts are lower and some are higher, but none are close to $5,200.
>
> . . .
>
> The District offered competent and credible testimonial and documentary evidence at the hearing as to its policy, and that all of the psychological evaluations it has funded over the past two years have been at a cost of $900, with the exception of two (one for $1,350 and another for $650). In cases where the IEE cost exceeds the maximum amount, the parents must demonstrate unique circumstances that justify the cost of the evaluation. The petitioner will bear the burden of demonstrating that his "unique circumstances" justified a departure from the district's reasonable cost cap on independent educational evaluations.

*C.P.*, 2018 WL 6975207 at *6 (citations omitted).

I find that if reimbursement is awarded at all, the evidence would not support an award of $5200. All of the evidence supports the conclusion that evaluations like these, absent unique circumstances which were not demonstrated, are reimbursed at $900. Assuming that two evaluations were permitted—and no one seems to be disputing that—the maximum reasonable reimbursement would have been $1800.

### C. The Five-Day Discovery Rule

Discovery in special-education administrative matters is governed by N.J. Admin. Code § 1:6A-10.1:

> (a) All discovery shall be completed no later than five business days before the date of the hearing.
>
> (b) Each party shall disclose to the other party any documentary evidence and summaries of testimony intended to be introduced at the hearing.

(c) Upon application of a party, the judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time.

(d) Discovery shall, to the greatest extent possible, consist of the informal exchange of questions and answers and other information. Discovery may not include requests for formal interrogatories, formal admissions or depositions.

The rule requires parties to turn over all discovery materials five business days before a hearing and requires the administrative law judge overseeing the matter to grant a motion to exclude undisclosed evidence. *Id.* (b)–(c).

The hearing, at the request of the parties, was rescheduled several times. The penultimate scheduled hearing date was September 7, 2018. For that date, the disclosures would have been due on August 30, 2018. The District did not turn over discovery before that that deadline. (For her part, C.P. refused to provide discovery at all.) On September 6, 2018, however, the ALJ again rescheduled the hearing to October 24, 2018. On October 17, the District timely provided its evidence to C.P. in compliance with the five-day rule.

The five-day disclosure rule is designed to prevent a party from ambushing its adversary with undisclosed evidence and testimony. Nobody was ambushed; the hearing did not occur on September 7, but on October 24, 2018. The District provided C.P. its discovery five business days before the October 24 hearing. (And it is not clear that C.P. ever provided discovery at all, making her objection doubly suspect.) At any rate, C.P. suffered no prejudice.

As to this discovery-related issue, the appeal is denied.

## IV.  CONCLUSION

For the reasons set forth above, the motions for summary judgment filed by the District (DE 24) and by C.P. (DE 25) are **GRANTED IN PART AND DENIED IN PART**. The case is remanded to the ALJ to conduct an additional

evidentiary hearing consistent with this opinion on the issue of liability only. The ALJ's decision is otherwise **AFFIRMED**.

     A separate order will issue.

Dated: August 6, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**